UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TAMINA CHRISTINE SHOCK,<br><br>Plaintiff,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and DETECTIVE T. BACHMAN, P#5796,<br><br>Defendants. | **Case No. 2:14-cv-1261-RFB-CWH**<br><br>**ORDER** |

## I.      INTRODUCTION

Before the Court are Motion for Partial Summary Judgment by Defendants (ECF No. 20), Motion for Summary Judgment by Plaintiff (ECF No. 36), Motion for Summary Judgment by Defendants (ECF No. 39), and Motions to Reconsider by Plaintiff (ECF Nos. 54, 61). In her Complaint, Plaintiff alleges Fourth and Fifth Amendment violations as a result of a search and seizure by the Defendants, Detective Bachman and Las Vegas Metropolitan Police Department (LVMPD). Plaintiff alleges that on March 24, 2014, Defendants, upon an improper search warrant, unlawfully searched her residence and seized medical marijuana plants for which she had a license. During the search, Plaintiff alleges that Defendants caused unnecessary damage to her property and injured her pet German Shephard dog.

Defendants filed Motions for Partial Summary Judgment and Summary Judgment (ECF Nos. 20, 39). Plaintiff filed a Motion for Summary Judgment (ECF No. 36). Plaintiff also filed Motions to Reconsider prior orders by Magistrate Judge Hoffman (ECF Nos. 54, 61). For the reasons stated below, the Court denies Plaintiff's Motion to Reconsider. (ECF Nos. 54, 61). The Court grants in part and denies in part Defendants' Motions for Partial Judgment (ECF No. 20)

1   and grants Defendants' Motion for Summary Judgment (ECF No. 39). The Court denies Plaintiff's

2   Motion for Summary Judgment as moot. ECF No. 36.

3

4   **II.    BACKGROUND**

5        Plaintiff filed the instant Complaint on July 31, 2014. ECF No. 1. In this Complaint,

6   Plaintiff alleges two causes of action: a Fourth Amendment search and seizure violation; and a

7   Fifth Amendment due process violation.

8        Defendants filed a Motion for Partial Summary Judgment on January 20, 2015, ECF No.

9   20.

10       Plaintiff filed a Motion for Summary Judgment on March 9, 2015. ECF No. 36

11       Defendant filed a Motion for Summary Judgment on March 20, 2015. ECF No. 39. To

12  date, Plaintiff has not responded to Defendant's Motion, though she has submitted additional

13  papers, which appear to be letters directed to Judge Hoffman. See ECF Nos. 60, 64. On May 20,

14  2015, Defendants filed a Reply to its Motion arguing that the Motion should be granted due to the

15  lack of opposition by Plaintiff and pursuant to LR 7-2. ECF No. 46.

16       On June 26, 2015, Magistrate Judge Hoffman issued an Order to Show Cause as to why

17  Defendants' various discovery-related motions should not be granted and why monetary sanctions

18  should not be imposed for her failure to appear at the June 22, 2015 hearing. ECF No. 50. On

19  August 3, 2015, in response to this Order, Plaintiff filed an objection and Motion for

20  Reconsideration. ECF No. 54.

21       At the hearing on August 12, 2015, the Judge Hoffman declined to award sanctions, but

22  advised Plaintiff that future failure to comply with her obligations will most likely result in the

23  imposition of sanctions. ECF No. 56.

24       On August 21, 2015, Judge Hoffman granted Defendants' Motion for Attorney's Fees in

25  the amount of $285.00. ECF No. 59. On November 12, 2015, Plaintiff filed an objection to this

26  Order. ECF No. 61.

27  / / /

28  / / /

### III.     MOTION TO RECONSIDER

Plaintiff filed two objections to Judge Hoffman's Show Cause Hearing on July 22, 2015. ECF No. 52. At this hearing, the Court awarded defense counsel one hour of attorney's fees associated with the June 22, 2015 motion hearing, at which Plaintiff was not present. ECF No. 49.

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (citation omitted) (internal quotation marks omitted).  This power is rooted in the common law, not the Federal Rules of Civil Procedure. Id. at 886.

Plaintiff fails to provide a reason as to why the Court should reconsider Judge Hoffman's order. From the record before it, the Court understands that Judge Hoffman issued one hour of attorney's fees for Plaintiff's failure to appear at a previous hearing. To date, Plaintiff has not explained why she failed to appear at the hearing. Further, based on Plaintiff's conduct at the hearing before this Court on January 27, 2016, in which Plaintiff refused to comply with courtroom procedures leading to the termination of the hearing, the Court agrees with and affirms Judge Hoffman's Order.

The Court therefore DENIES Plaintiff's Motions to Reconsider. ECF Nos. 54, 61.

### IV.     DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 20)

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996) (internal citation omitted). In other words, "[j]udgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most

favorable to that party." <u>Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989).

Defendants first argue that Plaintiff alleged no facts stating a valid Section 1983 claim based upon a violation of the Fifth Amendment. Where the Fourteenth Amendment applies to actions by state actors, the Fifth Amendment's Due Process Clause only applies to actions of the federal government. <u>See Rank v. Nimmo</u>, 677 F.2d 692 (9th Cir. 1982). LVMPD is not a federal entity, however, and Detective Bachman is not a federal officer.

The only possible protection of the Fifth Amendment applicable to the conduct of state governmental entities is found under the Self-Incrimination Clause. <u>See Michigan v. Tucker</u>, 417 U.S. 433, 443 (1974) ("the Court in Miranda, for the first time, expressly declared that the Self–Incrimination Clause was applicable to state interrogations at a police station"). However, the Complaint lacks any allegation suggesting any LVMPD officer forced Plaintiff in any criminal case to testify against herself. Here, Defendants are state, not federal, actors.

To the extent that Plaintiff attempts to convert her Fifth Amendment Due Process Claim into a takings claim, this also fails. While Plaintiff was entitled under state law to obtain a certain amount of marijuana, the evidence establishes that she had an amount well in excess of the legal amount. <u>See</u> ECF No. 39-1, Ex. F., Officer's Report. Therefore, Defendants were justified in confiscating the excess amount.

Furthermore, the Court finds that because possession of medical marijuana where one has a license remains illegal under federal law, the Defendants were further justified in their confiscation of her plants. <u>See</u> <u>Gonzales v. Raich</u>, 545 U.S. 1 (2005) (Application of Controlled Substances Act (CSA) provisions criminalizing manufacture, distribution, or possession of marijuana to intrastate growers and users of marijuana for medical purposes, as otherwise authorized by California Compassionate Use Act, did not exceed Congress' authority under Commerce Clause; prohibition of intrastate growth and use of marijuana was rationally related to regulation of interstate commerce in marijuana.); <u>Raich v. Gonzales</u>, 500 F.3d 850, 866 (9th Cir. 2007) ("We agree with Raich that medical and conventional wisdom that recognizes the use of marijuana for medical purposes is gaining traction in the law as well. But that legal recognition

1    has not yet reached the point where a conclusion can be drawn that the right to use medical

2    marijuana is 'fundamental' and 'implicit in the concept of ordered liberty.' For the time being, this

3    issue remains in 'the arena of public debate and legislative action.'"). Therefore, the Court finds

4    that, even if Plaintiff's Fifth Amendment claim were for a takings rather than due process claim,

5    this too would fail.

6         Second, Defendants argue that Sheriff Gillespie should be dismissed from the action for

7    various reasons. The Court does not find that Sheriff Gillespie is a named defendant in the action;

8    that he was ever served by Plaintiff; or that the Plaintiff names or identifies Gillespie in her

9    Complaint. Therefore the Court need not and cannot dismiss Gillespie from the action.

10        The Court therefore GRANTS Defendants' Motion as to dismissal of the Fifth Amendment

11   Claim; the Court does not determine whether Sheriff Gillespie is a proper Defendant in this case,

12   as he is not a defendant in this action.

13        Therefore the only remaining cause of action is Plaintiff's Fourth Amendment claim.

14

15   **V.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 39)**

16        **A. Legal Standard**

17        Summary judgment is appropriate when the pleadings, depositions, answers to

18   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

19   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

20   Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

21   the propriety of summary judgment, the court views all facts and draws all inferences in the light

22   most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960

23   (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than

24   simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

25   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

26   genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal

27   quotation marks omitted).

28

A party's mere failure to respond is not grounds for granting a motion for summary judgment. "[A] nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56. Short of that, we turn the summary judgment rule into a mere sanction for noncompliance with local rules." Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003); see also Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993). However, an opposing party's failure to respond does permit the Court to consider the moving party's assertions of fact as undisputed for purposes of the motion, and to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). See also Heineman v. Satterberg, 731 F.3d 914, 916-17 (9th Cir. 2013) (discussing the consequences of failing to respond to facts presented in a motion for summary judgment). Therefore, the Court will treat the facts as presented (with supporting evidence) by Defendants as undisputed for purposes of this motion.

### B. Undisputed facts

The Court finds the following facts to be undisputed.

#### 1. Anonymous Tip

On March 13, 2014, an anonymous citizen living close to Plaintiff's residence at 716 Purcell Drive in Las Vegas made unsolicited contact with LVMPD's narcotics section about possible illegal indoor marijuana at that location. The person reported that the odor emanating from the residence was very strong, but they had not seen persons living at the residence smoking marijuana outdoors. The anonymous source believed the marijuana odor was being forced outside by a wall-mounted air conditioner unit that sits in a window on the south side of the house. The source identified the possible suspect as "David Shockey" and gave a detailed description of him. The source further indicated that there were two aggressive German Shepherd dogs living at the residence.

#### 2. Bachman's Investigation

On March 14, 2014, Detective Bachman checked Nevada DMV records and discovered

four individuals listed the subject address as their address on their Nevada driver's licenses. These persons include: Tamina Shock (Plaintiff), David Shock, Larry Hyde, and Angel Gorman. Detective Bachman also did a criminal records check on these persons and found that Plaintiff had a prior domestic violence arrest in the state of Texas. David Shock had a much more extensive criminal record involving both drug related crimes and violent crimes. Detective Bachman also requested information from the Nevada Division of Health about whether any of the persons had obtained medical marijuana permits. He determined one of the four possible residents had obtained a medical marijuana permit and that being Plaintiff Tamina Shock.

On March 14, 2014, Detective Bachman and Detective R. Dockery conducted a surveillance of 716 Purcell Drive. They approached the residence on foot and observed the small window mounted air conditioner on the south side of the residence spoken of by the source. Detective Dockery reported being able to smell the odor of marijuana emanating from the subject residence. Detective Bachman also did a records check on the vehicle parked out front of the residence and obtained information that it was registered to Plaintiff. Detective Bachman submitted an administrative subpoena to NV Energy to do a power comparison between the subject residence and nearby residences with comparable square footage and without pools or spas. Detective Bachman discovered the subject residence was using on average of 2 to 3 times more power than two other nearby residences from August to 2013 to February 2014.

### 3. Search warrant

Detective Bachman submitted an application and affidavit for a search warrant based on these facts. Detective Bachman had his warrant application reviewed and approved by District Attorney Sandra Digiacomo before submitting it to the judge. On March 24, 2014, the Honorable Judge Cynthia Cruz found probable cause to support the search and signed the warrant authorizing a search of the residence and all persons present during execution of the warrant.

### 4. SWAT team involvement pre-search

After he obtained the warrant, Bachman provided the information to LVMPD Special Weapons and Tactics ("SWAT") to conduct the initial entrance and protective sweep of the residence to secure it for search by narcotics detectives. Two of the SWAT officers assigned to the

1    Blue team, Officers Wiggins and Stephensen, performed a reconnaissance at the residence and

2    then prepared a search plan.

3                                    **5.    Search of residence**

4            On March 25, 2014 at approximately 2:30 p.m., the Blue SWAT team arrived at 716 Purcell

5    and made several announcements toward the residence that they were police and serving a search

6    warrant. Plaintiff was the only person home at the time with her three dogs inside with her at the

7    time.  She was dressed in a robe and pajamas. Plaintiff saw SWAT officers outside of her home.

8    One officer was communicating with a public address device. She had trouble understanding what

9    was being said as her dogs were all barking.

10            After Plaintiff understood the police were there and directing their announcements to her,

11   she came out of the residence with her hands up. A SWAT officer escorted her off the property.

12   She was then walked down a few houses away from her residence and maintained there until she

13   had subsequent contact with Detective Bachman. She was not at any point placed in handcuffs.

14            The SWAT team then performed what they term a slow methodical search of the house.

15   Plaintiff indicated SWAT used a flash-bang device in her home at one point. One of the SWAT

16   officers encountered one of Plaintiff's German Shepherds and he was displaying aggression

17   toward him. The SWAT Officer consequently used a low lethal round to persuade the dog to go

18   into the backyard along with two other dogs. Detective Bachman had no involvement with respect

19   to the use of low lethal force on the dog or the initial sweep and clearing of the residence.

20            The SWAT team then secured the residence and turned it over to Detective Bachman and

21   several other narcotics detectives to conduct the search. The SWAT team pointed out to Detective

22   Bachman that a water pipe located in the garage was damaged, possibly due to the flash-bang

23   device, and so the water was turned off.

24                                  **6.    Interview with Plaintiff**

25            Detective Bachman identified himself to Plaintiff and read her the Miranda warning. He

26   asked her how much harvested marijuana she was able to legally possess with her permit and she

27   said up to two (2) ounces. Plaintiff also recalls Detective Bachman talking to her about a change

28   in the law in 2014. Plaintiff's husband arrived later and was held outside the home. Detective

Bachman also interviewed Mr. Shock and he admitted to daily use of the marijuana grown in the house despite not personally possessing a marijuana card.

### 7. Detective Bachman's search

Detective Bachman along with five other LVMPD narcotics detectives and another officer from the Henderson Police Department ("HPD") visually and physically searched the residence. Detective Bachman inventoried numerous items located during the search that are all involved in the growing of marijuana plants. The detectives also found and noted that Plaintiff had in her possession a total of twenty-four (24) marijuana plants and a large amount of harvested drug as well. Detective Bachman left in Plaintiff's possession 12 marijuana plants and 2.5 ounces of the drug to put her into compliance with the possession maximum allowed once the law changed a week later on April 1, 2014. Plaintiff admitted to growing an excessive amount of marijuana because she believed she needed it to meet her medical needs, and Plaintiff's husband admitted he used the drug daily despite not having a medical marijuana permit.

### 8. Post-interview action

After the conclusion of the interviews and the search of the residence, Detective Bachman determined there was no real evidence suggesting Plaintiff was involved in the sale of illegal marijuana. Detective Bachman did not submit charges against Plaintiff for possession of illegal substance. Detective Bachman confiscated the excess number of plants and drugs above the legal limit permitted by state law that would go into effect on April 1. Detective Bachman left Plaintiff a copy of the search warrant and a return listing the marijuana plants and drugs taken and impounded.

The SWAT team noted that there was a water line that was broken during the search. This was pointed out to Plaintiff and her husband before the police turned the home back over to them. Plaintiff's landlord repaired the damage to the line without charging Plaintiff anything for the repair. Plaintiff also complained about the hood over her stove being taken off during the search. Plaintiff's husband was able to screw it back on. The before-search photographs indicate that this hood was down on top of the stove before the narcotics detectives started their search. Detective

1    Bachman personally did not damage any of Plaintiffs windows or put any hole in any of the interior

2    walls.

3

4    **VI.    Analysis**

5        Having dismissed Plaintiff's Fifth Amendment due process claim, only Plaintiff's Fourth

6    Amendment search and seizure claim remains. Plaintiff alleges that the search and seizure was

7    unconstitutional because: the warrant was unlawfully obtained; the warrant was facially invalid;

8    and the warrant was not specific in describing what parts of the house could be searched. Plaintiff

9    also alleges that the way the search was executed was unconstitutional in that it caused unnecessary

10   damage to her property. Last, Plaintiff argues that her marijuana plants for which she had a medical

11   license were unlawfully seized as a result of the search.

12       The Court first addresses the general legal standard for bringing a Fourth Amendment

13   claim under Section 1983. The Court then addresses Defendants' arguments as to why they are

14   entitled to summary judgment based on the undisputed facts in this case.

15

16       **A.  Legal Standard – Fourth Amendment**

17       "The Fourth Amendment says that the 'right of the people to be secure in their persons,

18   houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' Its

19   'central requirement' is one of reasonableness. In order to enforce that requirement, this Court has

20   interpreted the Amendment as establishing rules and presumptions designed to control conduct of

21   law enforcement officers that may significantly intrude upon privacy interests. Sometimes those

22   rules require warrants. We have said, for example, that in 'the ordinary case,' seizures of personal

23   property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless

24   ... accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after finding

25   probable cause." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (internal citations omitted). "In

26   most circumstances, searches and seizures conducted without a warrant are '*per se* unreasonable

27   under the Fourth Amendment—subject only to a few specifically established and well-delineated

28

1    exceptions.'" <u>Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury</u>, 686 F.3d 965, 990 (9th

2    Cir. 2012) (citing <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)).

### 1.  Probable Cause Existed To Obtain The Warrant

4          First, Detective Bachman argues that he had developed probable cause to obtain the search

5    warrant and conduct the search. "Probable cause for a warrantless arrest arises when the facts and

6    circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe

7    that the suspect has committed an offense." <u>Crowe v. Cty. of San Diego</u>, 608 F.3d 406, 432 (9th

8    Cir. 2010). "Probable cause requires only a probability or substantial chance of criminal activity,

9    not an actual showing of such activity." <u>Illinois v. Gates</u>, 462 U.S. 214, 244 n.13 (1983).

10         The Court finds that Detective Bachman had probable cause to obtain the search warrant

11   and conduct the search of Plaintiff's residence. The facts establish that, after receiving the

12   anonymous tip of marijuana use at the Plaintiff's residence, Detective went to the property to

13   conduct an investigation and confirm the tip. Detective smelled the marijuana and also obtained

14   power records that demonstrated the occupants were using up to three times the power of similar

15   residences nearby. Last, Detectives determined that an occupant of the residence, Plaintiff's

16   spouse, had a criminal history in drug crimes including the manufacturing and sale of

17   methamphetamine, and there was also only one person in the residence holding a medical

18   marijuana permit. The Court also finds that, as previously discussed, despite the fact that Plaintiff

19   has a medical marijuana license in Nevada, probable cause is grounded in the fact that possession

20   of marijuana is illegal under federal law.

21         The Court therefore finds that Detective Bachman had probable cause to obtain the search

22   warrant and conduct the search.

### 2.  Detective Bachman did not improperly obtain the warrant.

24         To the extent that Plaintiff alleges that the Detective improperly obtained the search

25   warrant from the judge, the Ninth Circuit has held that "in a civil rights case where a claim of

26   judicial deception is made, if an officer 'submitted an affidavit that contained statements he knew

27   to be false or would have known to be false had he not recklessly disregarded the truth and no

28   accurate information sufficient to constitute probable cause attended the false statements, ... he

1   cannot be said to have acted in a reasonable manner,' and the shield of qualified immunity is lost."

2   Liston v. Cty. of Riverside, 120 F.3d 965, 972 (9th Cir. 1997), as amended (Oct. 9, 1997) (internal

3   citation omitted).

4       Detective Bachman submitted the search warrant application to Judge Cynthia Cruz and,

5   upon finding probable cause, she signed the warrant on March 24, 2014. ECF No. 39, Ex. D. In

6   seeking the warrant, Detective Bachman prepared a detailed affidavit stating all the bases for which

7   he believed there was probable cause. Id., Ex. A. While Plaintiff disputes the truth of the

8   anonymous tip made to the Detective, she has not demonstrated that the information in the affidavit

9   is materially false, that the affidavit contained statements Detective knew to be false or that he

10  recklessly disregarded the truth. See Id., Ex. B, Plaintiff Depo. pp. 55-59, 61-71. Therefore, the

11  Court rejects Plaintiff's argument that the warrant was improperly obtained, given that there was

12  no deception or misrepresentation made to the court.

13      The Court will not address Defendant's argument that the prosecutorial finding of probable

14  cause also insulates Detective from liability in obtaining the warrant, because the Court rejects the

15  Plaintiff's argument that the warrant was improperly obtained through judicial deception.

16  

17          **3.  Detective Bachman relied in good faith on a facially valid and
            supportable warrant.**

18      When a search or seizure is made pursuant to a warrant, an officer involved in leading the

19  search is immune from suit unless the warrant application is "lacking in indicia of probable cause."

20  See Malley v. Briggs, 475 U.S. 335, 344-45 (1986) ("Accordingly, we hold that the same standard

21  of objective reasonableness that we applied in the context of a suppression hearing in Leon, defines

22  the qualified immunity accorded an officer whose request for a warrant allegedly caused an

23  unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable

24  cause as to render official belief in its existence unreasonable, Leon, will the shield of immunity

25  be lost."); United States v. Leon, 468 U.S. 897, 922–23, (1984) (search pursuant to a warrant is

26  invalid if no reasonable officer could have believed the warrant was valid).

27  / / /

28  / / /

1    Upon review of the warrant, the Court finds that a reasonable and prudent officer, based

2  on the signed warrant by the judge as well as the attached Affidavit, would believe that there was

3  a legal basis to conduct a search and seizure. ECF No. 39, Exs. A, D.

4    Therefore, the Court finds that Defendant is entitled to summary judgment based on his

5  good faith reliance on a facially valid, supportable warrant.

6    Having found that the obtaining and reliance upon the search warrant was not improper,

7  the Court next turns to whether the execution of the warrant was unconstitutional under the Fourth

8  Amendment.

**4.  Detective Bachman Not Liable**

9    "In order for a person acting under color of state law to be liable under section 1983 there

10  must be a showing of personal participation in the alleged rights deprivation: there is no *respondeat*

11  *superior* liability under section 1983." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The

12  Ninth Circuit "defined the contours of individual liability further when we stated a plaintiff could

13  not hold an officer liable because of his membership in a group without a showing of individual

14  participation in the unlawful conduct." Id. at 935. Individual participation "require[s] the plaintiff

15  to first establish the 'integral participation' of the officers in the alleged constitutional violation."

16  Id.

17    "[I]integral participation does not require that each officer's actions themselves rise to the

18  level of a constitutional violation." Boyd v. Benton Cty., 374 F.3d 773, 780 (9th Cir. 2004). For

19  example, "an officer who does not enter an apartment, but stands at the door, armed with his gun,

20  while other officers conduct the search, can nevertheless be a 'full, active participant' in the

21  search." Id.

22    The Court finds that the evidence shows that Detective Bachman did not use force against

23  Plaintiff's dog and did not do any damage to Plaintiffs property while securing the residence.

24  Rather, Detective Bachman handed the initial entry off to the SWAT team, because of the

25  intelligence suggesting there were possibly violent and armed persons living in the residence.

26  Detective Bachman was not involved in the entry and warrant service, the pre-raid reconnaissance,

27  the assignment to the SWAT officers for the entry line-up or securing other parts of the exterior of

28  the home, direct contact with the Plaintiff, discharging of an explosive device, or any decision to

- 13 -

use force on the dog. The Court therefore finds that Detective Bachman was not an integral participant in the execution of the warrant.

The Court GRANTS summary judgment to Detective Bachman regarding the execution of the warrant. In light of this finding, the Court does not address Defendants' additional arguments as to whether the search itself was objectively reasonable, or whether Plaintiff has established evidence suggesting her property was unreasonably damaged by Defendants during the search.

### 5.  LVMPD Not Liable

Local governments can be held liable under Section 1983 for deprivations of federal rights only if the violation is caused by action taken pursuant to official municipal policy or custom. Municipalities may not be held liable under a theory of *respondeat superior*. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). There are four ways to establish municipal liability: 1) Official decision by policymaking body (Monell); 2) Action by one with final policymaking authority (Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)); 3) Failure to train (City of Canton v. Harris, 489 U.S. 378, 388 (1989); and 4) Custom (Gillete v. Delmore, 979 F.2d 1342, 1348 (9th Cir.1992)).

Plaintiff has failed to allege in her Complaint, or demonstrate or identify in her moving papers: any particular policy or practice failing; action by any defendant with final policymaking authority; or failure to train.

The Court therefore GRANTS Defendant LVMPD summary judgment as to the remaining Fourth Amendment Claim.

### VII.   CONCLUSION

The Court therefore orders the following:

The Court GRANTS in part and DENIES in part Defendant's Motion for Partial Summary Judgment (ECF No. 20). The Court GRANTS the dismissal of the Fifth Amendment claim but does not grant dismissal of Sheriff Gillespie, who the Court finds is not a party to the action.

The Court DENIES Plaintiff's Motion to Reconsider. ECF Nos. 54, 61.

The Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 39.

1    The Court therefore DENIES as moot Plaintiff's Motion for Summary Judgment, ECF No.

2    36.

3    The Clerk of the Court is therefore instructed to close this case.

4

5    **DATED:** <u>July 25, 2016</u>.

6

7                                                    **RICHARD F. BOULWARE, II**

8                                                    **UNITED STATES DISTRICT JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28